**CITIZENS BUDGET CO v CLARKE et**

Cleveland Municipal Court

Decided Jan 16, 1935

Farquharson, Curtis, Gillie & Miller, Cleveland, and Niman & Buss, Cleveland, for plaintiff.

Bloomfield, Orr & Vickery, Cleveland, for defendants.

## OPINION

By STACEL, J.

On the 22nd day of January, 1929, the defendants borrowed from the plaintiff finance company the sum of $2,004.00, and defendants executed and delivered a note for that amount to the plaintiff, the interest being computed to average between eight and nine per cent per annum and the payments were required on a monthly installment basis.

The plaintiff company on the day in question was a licensee under §6346-1 et seq., GC, commonly known as the Small Loan Act.

At that time the legal rate of interest that could have been charged by the plaintiff as provided for by §6346-5 GC was three per cent per month. The facts are undisputed that this rate was never charged by the plaintiff company on the note in question but that a lesser amount was charged and received.

On the 4th day of July, 1929, it being about six months after the note was given by the defendants, there became effective an amendment to the Small Loan Act, under which the plaintiff was operating known as §6346-5a GC, which in substance, provides that three per cent per month may be charged on loans not exceeding $300.00 and eight per cent per annum on loans in excess of $300.00 by any licensee operating under the above section. This amendment also provides:

"If interest consideration or charges in excess of those permitted by this act shall be charged, or received, the contract and all the papers in connection therewith shall be void and the licensee shall have no right to collect or receive any principal, interest or charges whatsoever."

The facts further indicate that when the amendment became effective a large amount of the note was still unpaid. The defendants, however, kept paying on the principal and interest according to the original terms until the note together with the interest was reduced to $185.30 and remained unpaid. It is for this amount that the plaintiff brings its action for recovery.

The defendants contend that after July 4, 1929, when the amendment went into effect, the plaintiff finance company could only collect on the balance due on the note

the new rate of interest over and above $300.00, namely, eight per cent per annum.

The facts as indicated above show that actually the company did collect a little more than eight per cent per annum and for that reason it is contended by defendants that the company collected usurious interest under the amended section, namey, §6346-5a GC, therefore the entire contract as of that time and all papers therewith became null and void, therefore the plaintiff could not recover the balance due. The defendants further claim that they should recover back all the money paid after the effective date of the amendment and pray for a judgment of $1,017.97 on the cross-petition against the plaintiff.

The issues raised by the pleadings in this case resolve themselves not so much on questions of fact, because the facts are not seriously disputed, but rather on several interesting questions of law.

The defense seems to be predicated upon the theory that any charge made by the plaintiff on the loan in question after the effective date of §6346-5a GC in excess of eight per cent per annum is illegal and results in the entire note becoming null and void.

Query: Which law should govern, namely §6346-5 GC, which was in effect at the time the contract was made, or §6346-5a, GC, which became effective after the original obligation was contracted?

In answering that question we must of necessity determine whether or not the transaction between the loan company and the defendants was in fact an executory contract or an executed contract.

Bouvier's Law Dictionary defines the terms as follows:

"Executed Contract: One which has been fully performed."

"Executory Contract: One in which some future act is to be done—as where an agreement is made to build a house in six months, or to do any act in the futnre."

Clearly then, under these definitions, a transaction between two parties—one borrowing $2,004.00 from the other—exchanging the money for the note is, in the opinion of the court, an executed contract, the installment payments being, while very important, only incident to the making of the contract. In other words, the duties and obligations on the part of the lender and borrower were fully fixed when the money and the note were exchanged.

Sec 28 of Article 2 of the Constitution of Ohio provides as follows:

"The General Assembly shall have no power to pass retroactive laws or laws impairing the obligation of contract."

And, of course, any attempt to do so likewise would be a violation of the state Constitution as well as the Constitution of the United States.

It is needless here to define the term "retroactive" and "retrospective," except to say that such laws have reference to a state of things existing before the act in question was passed, and in construing a law which is claimed has retrospective effect the Supreme Court of the United States held, in 112 U. S. 559, 3 C. R. A. 398, and other cases, as follows:

"Words in a statute ought not to have retrospective application unless they are so clear, strong, and imperative that no other meaning can be annexed to them, or unless the intention of the legislature cannot otherwise be satisfied."

In reading §6346-5a GC, can it be said that the words in the statute as amended are so clear, strong, and imperative as to indicate that the legislature intended to affect obligations which were entered into in good faith by contracting parties prior to the passage of the amendment?

Inasmuch as the real issue is a question of the rate of interest that could be charged on an existing obligation after the passage of the amendment, the court desires at this time to call attention to 33 C. J., page 217:

"The general rule that statutes operate prospectively only and not retrospectively applies to statutes changing the rate of interest of debts, obligations, etc."

"Where parties to a contract have stipulated for the payment of a specified rate of interest, lawful at the date of the contract, such contract rate will not be affected by a subsequent statute, or constitutional provision, changing the rate permitted to be contracted for, as this would amount to an impairment of the obligation of the contract; and the rule applies whether the contract to pay interest is express or implied. And it is immaterial whether the interest sought to be recovered had accrued before or after the principal sum was due."

The defendants lean heavily on the argument that the plaintiff company is a

licensee under §6346-1 et seq., GC, and that as such the company takes its license with the knowledge that the law giving its corporate powers may be changed from time to time and that the special license to do business under the small loan act comes under the police powers of the state.

The court agrees with the proposition that the state, in the exercise of its police powers, is authorized to subject many different kinds of businesses and occupations to reasonable regulations for the protection of the public welfare, morals and safety. In other words, the legislature has the right to change the rate of interest licensees may charge under the small loan act as often as it sees fit to do so and every corporation licensee would be bound by such changes no matter how often such changes would come about. But can it be claimed that all executed contracts throughout the state that may have been entered into by all the different licensees with their borrowers could be modified each month, or oftener if the legislature so desired, with respect to the rate of interest that could be collected on its pre-existing obligations? Would that not be an unreasonoble regulation and an unwise discretion of the exercise of the police powers, and would not such a situation run afoul of both the Ohio and the United States Constitution, because such laws would have a retroactive effect and certainly would be impairing the obligation of contracts then in existence.

The defendant relies also quite strongly on the case of Louisville & Nashville Railroad Co. v Mottley, 219 U. S. 467. In that case the railroad company issued for compensation an annual pass to Mottley for life. Some years later, Congress, acting under its reserve power of control over interstate commerce, prohibited such agreements. While the court in that case held that the contract for the annual pass though made prior to the passage of the act of Congress prohibiting such passes unenforceable, it did so on the theory that the contract was an executory contract, so that things were yet to be done by the railroad company after the passage of the prohibiting act, and under those circumstances Congress certainly had a right to legislate against it under its whole constitutional power.

The defendant further depends upon the case of **Massillon Savings & Loan Company v The Imperial Finance Company, 114 Oh St 523.** The defendant in his brief cites the first syllabus, which reads as follows:

"When a contract is legal when made, and subsequently such contract or its performance is prohibited by statute, performance thereof after the time when such prohibitive law becomes effective is illegal, and neither party can recover for breach of the contract."

In this connection syllabus 2 also should be read in conjunction with syllabus 1. Syllabus 2 reads as follows:

"So far as such contract has been executed prior to the effective date of such statute, recovery will be permitted, if the contract is not entire, but divisible, and the amount due can be apportioned."

Unless one reads the facts in that case, syllabus 1 might tend to confuse. The facts are as follows:

"On March 31, 1923, the parties hereto entered into a contract, whereby the finance company agreed to sell and dispose of 20,000 shares of stock and a like number of memberships in the Savings & Loan Company. Under this contract the entire issue was to be sold within 24 months, but by later supplemental agreement this time was changed to June 30, 1924. The shares of stock were to be sold for $100 each, and for each share so sold a membership therein was to be sold for the sum of $5. For its service the finance company was to receive the sum of $4 for each and every membership sold by it. * * *

"It does not appear from the evidence that any sales of memberships were made prior to July 2, 1923, nor that any moneys were retained from sales made prior to that period. * * *"

The record discloses that after the execution of the contract, and after the effective date of the so-called King Law (110 Ohio Laws, p. 62), prohibiting the sale of stocks and memberships for compensation or fee, the Finance Company, under its contract, had sold more than 8,000 shares of memberships. * * * And it is for that amount that action was brought to recover.

Quoting from the opinion of Judge Jones, on page 526, we have the following:

"We have, therefore, a case where, although the contract was legal when made, its performance became illegal after the effective date of the so-called King law. * * *

"We have no hesitancy in saying that while the contract was legal in its inception the performance of its covenants by

either party, after the effective date of the prohibitive law, became illegal, and neither party thereto could recover for its breach. **Had the contract been so far executed that sales of memberships had been made thereunder prior to the effective date of the King Law, recovery, no doubt, would be permitted where the contract is divisible and the amount due can be apportioned. But the performance of this contract still remained executory at the time the law prohibiting the making of such contract became effective."**

So we come back to the original question was the loan in question here an executed or an executory contract?

It is the opinion of this court that such a transaction, the lending of money and the delivering of the note, is an executed transaction, nothing remaining to be done except pay back the money borrowed in installments and at a stipulated rate of interest.

The Supreme Court of this state, in **114 Oh St, page 523,** recognized the distinction between executory contracts and contracts which have been fully performed except for the payment of money by one of the parties.

Reaching these conclusions, the court finds for the plaintiff on his petition for the sum of $185.30 together with interest as prayed for.

Now coming to the cross-petition, the court says that had the court reached a different conclusion on the plaintiff's petition and had found that the contract after the passage of the amendment had become null and void, the court would have reached the conclusion that the plaintiff is entitled to a finding on the defendant's cross-petition for the obvious reason that the payments made after the amendment became effective were voluntarily made under a mistake of law and could not be recovered by the defendant. And for that reason, the court finds for the plaintiff on the defendant's cross-petition.